# Dr. John R. SONNENBURG, and Marjorie A. Sonnenburg, Plaintiffs-Respondents,

## v.

# Deneen GROHSKOPF, and Heritage Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 87–1894. Submitted on briefs February 18, 1988.—Decided March 30, 1988.*

(Also reported in 422 N.W.2d 925.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *James E. Snodgrass* of *Snodgrass & Simpson* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William W. Moir, III* of *Hayes, Neumann, Humke, Moir & Van Akkeren, S.C.* of Sheboygan.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.  Deneen Grohskopf and Heritage Insurance Company (collectively Grohskopf) appeal from the trial court's ruling that the settlement offer

made by Dr. John R. Sonnenburg and Marjorie A. Sonnenburg pursuant to sec. 807.01(3), Stats., could be revoked at any time prior to acceptance. The sole issue on appeal is whether the trial court properly permitted the Sonnenburgs to withdraw their offer of settlement prior to Grohskopf's acceptance. Because we conclude that the trial court correctly applied sec. 807.01(3), we affirm.

The present suit stems from a two-car accident in Sheboygan county. On July 1, 1987, the Sonnenburgs mailed a written offer of settlement, which was received by Grohskopf on July 6, 1987. However, before Grohskopf accepted, the Sonnenburgs withdrew the offer at a pretrial conference on July 13, 1987. On July 14, 1987, Grohskopf, fully aware that the Sonnenburgs had revoked their offer to settle, sent a notice of acceptance to the court.

Grohskopf argues that sec. 807.01(3), Stats., requires that the party making the offer keep the offer open for ten days. Section 807.01(3) reads:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. *If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court.* If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs. [Emphasis added.]

64

Construction of a statute is undertaken when ambiguity exists. *Kenosha County Dept. of Social Servs. v. Nelsen,* 95 Wis. 2d 409, 414, 290 N.W.2d 544, 547 (Ct. App. 1980), *aff'd,* 102 Wis. 2d 49, 305 N.W.2d 924 (1981). Whether a statute is ambiguous is a question of law which the court of appeals reviews without deference to the trial court. *See LaRene v. LaRene,* 133 Wis. 2d 115, 119, 394 N.W.2d 742, 744 (Ct. App. 1986). Statutory language is ambiguous if reasonable persons could disagree as to its meaning. *State v. Williquette,* 129 Wis. 2d 239, 248, 385 N.W.2d 145, 149 (1986).

Because reasonable people could disagree as to the proper meaning of sec. 807.01(3), Stats., we conclude that the statute is ambiguous. As Grohskopf contends, it is possible that sec. 807.01(3) could be read to mean that a defendant may accept a settlement offer at any time within ten days of having received the offer. However, as the Sonnenburgs correctly point out, because the statute contains no language explicitly prohibiting revocation of the offer, sec. 807.01(3) could also be understood to preserve the well-established right of an offeror to revoke an offer any time before acceptance. *See Larson v. Superior Auto Parts, Inc.,* 275 Wis. 261, 270, 81 N.W.2d 505, 510 (1957).

The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *In re P.A.K.,* 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681 (1984). When a statute is ambiguous, the legislature is presumed to have intended an interpretation that advances the purposes of the statute. *Belleville State*

*Bank v. Steele,* 117 Wis. 2d 563, 570, 345 N.W.2d 405, 409 (1984). The cardinal rule in interpreting statutes is to favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest purpose of the act. *In re Halsted,* 116 Wis. 2d 23, 29, 341 N.W.2d 389, 392 (1983). Courts must look to the commonsense meaning of a statute to avoid unreasonable and absurd results. *NCR Corp. v. Department of Revenue,* 128 Wis. 2d 442, 456, 384 N.W.2d 355, 362 (Ct. App. 1986).

Section 807.01(3) Stats., has remained essentially unchanged since 1971, when the language assessing double costs was added by the legislature. *See* ch. 27, Laws of 1971. The parties have not cited any of the statute's legislative history; nevertheless, there can be little doubt that the statute's main purpose is to encourage the settlement of lawsuits before trial. In our view, the fulfillment of that goal can best be achieved by reading sec. 807.01(3) to mean that offers of settlement are revocable.

Section 807.01(3), Stats., is not designed to commit the plaintiff to an irrevocable offer; rather, its purpose is to give the defendant a specific number of days to accept. If the legislature had not included this statutory language, uncertainty would result from its failure to address the question of how long sec. 807.01(3) settlement offers could remain open. By forcing a defendant to accept within ten days, the legislature has eliminated that uncertainty. However, this in no way implies that the legislature intended to deprive an offeror of the well-settled right to revoke an offer any time before acceptance.

We are convinced that plaintiffs are more likely to make settlement offers under sec. 807.01(3), Stats.,

if they know that the offers may be withdrawn or modified should circumstances change or new evidence be discovered. Conversely, plaintiffs are less likely to offer to settle if their offers are irrevocable; if offers are irrevocable, plaintiffs seeking to settle run the risk of being locked into offers which later become unfavorable due to a change in circumstances or the revelation of new information. We conclude that construing the statute to mean that offers are revocable is the reading of sec. 807.01(3) which best promotes the purpose of the statute—to encourage settlements.

It is undisputed that the Sonnenburgs did in fact revoke their settlement offer at the pretrial conference held on July 13, 1987. Because the Sonnenburgs' offer had been withdrawn, Grohskopf's attempted acceptance on July 14, 1987 had no legal effect. The trial court correctly allowed the case to proceed to trial.

*By the Court.*—Judgment affirmed.