151 Wis.2d 725 (1989)
445 N.W.2d 729
IN the INTEREST OF T.L., A Person Under the Age of Eighteen: E.H., Appellant,
v.
MILWAUKEE COUNTY, Respondent.
No. 88-0836.
Court of Appeals of Wisconsin.
Submitted on briefs December 6, 1988.
Decided July 26, 1989.
*727 For the appellant the cause was submitted on the briefs of Curt M. Weber, of Wauwatosa.
For the respondent the cause was submitted on the briefs of E. Michael McCann, district attorney, by Christine M. Kraus, assistant district attorney, of Wauwatosa.
For E.H. the cause was submitted on the briefs of Joseph G. Alioto, guardian ad litem for E.H., of Milwaukee.
For T.L. the cause was submitted on the briefs of Legal Aid Society of Milwaukee, Inc., by Anne Marie Abell, guardian ad litem for T.L., of Milwaukee.
Before Moser, P.J., Sullivan and Fine, JJ.
MOSER, P.J.
E.H. appeals from a corrected dispositional order which determined that her son, T.L., was in need of protective services, and placed him in the custody of the Milwaukee County Department of Social Services (DSS) for one year. We accept E.H.'s argument that the dispositional order must be reversed because her guardian ad litem (GAL) waived contest of the "Child in Need of Protective Services" (CHIPS) petition, even though her expressed wishes were to contest it. We *728 reverse the order and remand the cause for proceedings consistent with this opinion.
The genesis of this case is a "Petition for Determination of StatusIn Need of Protective Services" which was filed on May 15, 1987, and thus began a CHIPS proceeding pursuant to secs. 48.13(3), (10), and (11), Stats. The petition alleged that T.L., a six-year-old child, was the subject of physical and/or sexual abuse, and was emotionally damaged and cognitively underdeveloped. E.H., T.L.'s mother, was found to be indigent by the Juvenile and Mental Health Division of the office of the State Public Defender. She was assigned adversary counsel.[1] An emergency hearing was held on May 15, 1987, wherein adversary counsel voiced his concern over E.H.'s competency, and requested the appointment of a GAL. A GAL was subsequently appointed to E.H. on May 29, 1987.[2]
In short, the pivotal issue of this case stems from the fact that E.H. expressed her desire to challenge the CHIPS petition, and sought the return of her son. E.H.'s adversary counsel maintained her posture on this issue throughout the CHIPS proceedings. E.H.'s GAL, on the other hand, maintained that it was not in the best interests of E.H. to have her child returned, because testing and analysis revealed that she could not manage the burden of caring either for herself or for a child allegedly suffering from physical and emotional disabilities. The GAL asserted that E.H. would waive her right to contest the CHIPS proceedings.
The trial court received briefs and heard argument on the above issue. A written decision was filed on November 24, 1987. The court determined that if a parent in a CHIPS proceeding (1) does not understand the *729 nature of the proceeding, (2) cannot communicate effectively with adversary counsel in preparation of her case, and (3) does not have the capability of reasoning, then she may be determined as being incompetent. The court also determined that if a parent were incompetent, then the GAL would be required to assume the responsibility for making choices with regard to the CHIPS proceeding, and adversary counsel must defer to those choices. Furthermore, the trial court stated that incompetency determinations in these situations involve an evaluation of the parent by mental health officials, an accompanying report and an option to challenge or accept the report.
The court specifically stated that:
An incompetent parents in a CHIPS proceeding, much like an incompetent criminal defendant, would be deprived of a fair trial/hearing by virtue of their own mental illness/disability without ameliorative action by a court. The action authorized by the legislature is the appointment of a guardian ad litem. When the parent's mental illness/disability renders them incapable of understanding the nature of the proceedings and rational decision making in consultation with adversary counsel, the guardian ad litem must assume that responsibility, choosing a course of conduct which they view to be in the best interests of their ward. In some instances, this will undoubtedly be done over the expressed opposition of an incompetent ward.
At a hearing held on January 14, 1988, the trial court found E.H. incompetent, based upon an evaluation conducted on November 25, 1987, by clinical psychologist Stephen F. Emiley (Emiley). Neither adversary counsel nor the GAL objected to the determination of incompetency. E.H. was found to have an I.Q. of 68, *730 which reveals overall cognitive efficiency in the upper end of the mild retardation range. Also, adversary counsel described E.H.'s inability to understand either the CHIPS proceeding or a jury trial, and to realistically discuss them with him. On January 14, the trial court also found that through her GAL, E.H. had knowingly and voluntarily waived her right to contest the CHIPS petition. The assistant district attorney, the GAL for the juvenile, the GAL for E.H. and her adversary counsel were present at this hearing. Also, given the anticipated finding of incompetency and the no contest position of these attorneys, they had entered into a dispositional stipulation prior to coming to the hearing.
A corrected dispositional order was entered by the trial court on April 11, 1988. This order adopted the dispositional stipulation reached by the assistant district attorney, the GAL for E.H. and her adversary counsel and the GAL for T.L. The court found T.L. in need of protective services, and placed him in the custody of the DSS for one year, until January 14, 1989. E.H. appeals from this order. Her sole issue on appeal is whether an adversary counsel may be required to defer to a GAL, where the GAL advocates a position contrary to a parent's expressed wish to contest a CHIPS petition. E.H.'s argument is limited to the scope of the proper functioning of adversary counsel vis-a-vis that of a GAL in these situations.
STANDARD OF REVIEW
[1-3]
Resolution of this appeal involves the interpretation of statutes and their application to an undisputed set of facts. Construction of a statute is a question of law, which this court reviews without deference to the trial *731 court's determination.[3] Generally, when a statute is plain and unambiguous, the plain meaning must be given to the statute.[4] However, a statute is ambiguous if reasonable persons could disagree as to its meaning.[5]
[4-6]
"When the language of a statute is ambiguous, we examine the scope, history, context, subject matter and object of the statute to discern the legislative intent."[6] "The cardinal rule in interpreting statutes is to favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest purpose of the act." [7] And, "[c]ourts must look to the commonsense meaning of a statute to avoid unreasonable and absurd results." [8]
[7]
Furthermore, "[w]hen there is a conflict or inconsistency between statutes on the same subject matter, we must construe the statutes in a manner that harmonizes them in order to give each full force and effect."[9] The same method of construction is true when there is conflict between provisions of the same statute.[10] Also,
"[i]t is assumed that whenever the legislature enacts a provision it had in mind previous statutes relating *732 to the same subject matter, wherefore it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they should all be construed together."[11]
CONCURRENT AUTHORITY OF ADVERSARY COUNSEL AND GUARDIAN AD LITEM
The statutes which govern parental rights in CHIPS proceedings appear to conflict because they allow for the simultaneous appointment of adversary counsel and a GAL, both of which participate in determining the parent's course of conduct. Section 48.23, Stats., provides for the appointment of adversary counsel as follows:
48.23(2) RIGHT OF PARENTS TO COUNSEL. (a) Whenever a child is alleged to be in need of protection or services under s. 48.13, or is the subject of a proceeding involving a contested adoption or the involuntary termination of parental rights, any parent under 18 years of age who appears before the court shall be represented by counsel; but no such parent may waive counsel. A minor parent petitioning for the voluntary termination of parental rights shall be represented by a guardian ad litem. If a proceeding involves a contested adoption or the involuntary termination of parental rights, any parent 18 years old or older who appears before the court shall be represented by counsel; but the parent may waive counsel provided the court is satisfied such waiver is knowingly and voluntarily made.

*733 (b) If a petition under s. 48.13 is contested, no child may be placed outside his or her home unless the nonpetitioning parent is represented by counsel at the fact-finding hearing and subsequent proceedings. If the petition is not contested, the child may not be placed outside his or her home unless the nonpetitioning parent is represented by counsel at the hearing at which the placement is made. However, the parent may waive counsel if the court is satisfied such waiver is knowingly and voluntarily made and the court may place the child outside the home even though the parent was not represented by counsel.
. . . .
(6) DEFINITION. For the purposes of this section, "counsel" means an attorney acting as adversary counsel who shall advance and protect the legal rights of the party represented, and who may not act as guardian ad litem for any party in the same proceeding.
Section 48.23(3), Stats., provides for the appointment of a GAL. That section states:
POWER OF THE COURT TO REQUIRE REPRESENTATION AND APPOINT GUARDIANS AD LITEM. At any time, upon request or on its own motion, the court may appoint a guardian ad litem for the child or any party and may appoint counsel for the child or any party, unless the child or the party has or wishes to retain counsel of his or her own choosing.
Furthermore, secs. 48.02(9) and 48.235, Stats., state:
48.02(9) "Guardian ad litem" means a lawyer admitted to practice in this state who is appointed to protect the interest of the child or an incompetent in a particular court proceeding.

*734 48.235 Guardian ad litem. A guardian ad litem appointed under this chapter shall be appointed under s. 879.23. On order of the court, the guardian ad litem shall be allowed reasonable compensation to be paid by the county in which the proceeding is held. The guardian ad litem has none of the rights of a general guardian. No person who is an interested party in a proceeding, appears as counsel in a proceeding on behalf of any party, or is a relative or representative of an interested party, may be appointed guardian ad litem in that proceeding.
While the above statutes provide for the appointment of both adversary counsel and a GAL, they do not delineate the allocation of power between the two when they simultaneously represent the interests of a CHIPS parent. Therefore, we may look to the scope, history, context, subject matter and object of the Children's Code[12] to determine legislative intent, which we will consider in resolving the above statutory ambiguity.
[8]
The Children's Code encompasses all legal actions involving minors, including adoption, termination of parental rights, prosecution for delinquent acts, holding a child in custody and removing children from abusive or neglectful home environments.[13]With regard to the provisions which provide for the involvement of adversary counsel and GALs, the obvious goal is to protect the rights of children and parents. While it is a given that when the interests of children and parents conflict, the conflict is to be resolved in favor of the children,[14] involved parties must abide by the dictates of professional *735 and legal codes alike. Furthermore, "a parent's interest in the custody of a child is'... cognizable and substantial.'"[15]
We note that the Wisconsin legislature has delineated other situations where both an attorney and a GAL concurrently represented the interests of an individual. One such situation exists in proceedings initiated to permanently terminate parental rights.[16] While the statute which allows for the termination of parental rights does not specifically call for the appointment of adversary counsel and/or a GAL, such termination actions may fall within the scope of CHIPS proceedings in general, which do allow for such appointments.
Waukesha County DSS v. C.E.W.[17] is one case where the Wisconsin Supreme Court accepted certification of an appeal involving an involuntary termination of parental rights which stemmed from a CHIPS proceeding. In C.E.W., a GAL was appointed for the children, and was allowed to voir dire the jury, present witnesses and cross-examine witnesses. However, the GAL was precluded from making an opening or closing argument, and from exercising any peremptory strikes in jury selection. The supreme court ruled that the trial court erred by so limiting the authority of the GAL because the GAL was required to protect the interests of the children.[18] Thus, GALs in Children's Code proceedings have been given authority to participate in those proceedings.
Other areas in which our legislature has allowed for the simultaneous appointment of adversary counsel and *736 a GAL are in incompetency determinations[19] and in protective service actions, which involve persons who are infirm due to aging, chronic mental illness, mental retardation, and other like incapacities.[20] However, there are no common law decisions in these areas which flesh out the competing responsibilities of an adversary counsel and a GAL.
[9]
In the case at hand, the issue appealed focuses on the scope of the proper functioning of adversary counsel when a CHIPS parent expressly wishes to contest a CHIPS petition, and when questions exist as to the parent's competency. We conclude that an appointed adversary counsel
has the same function, duties and responsibilities as he would have if he were retained by the person involved as his or her own attorney. The duties and responsibilities of lawyer to client in this state are set forth in the Code of Professional Responsibility promulgated by [the Wisconsin Supreme Court]. They include preserving the confidence and secrets of a client, exercising independent professional judgment on behalf of a client, representing a client competently, and representing a client zealously within the bounds of the law.
These court rules and requirements apply to legal counsel for persons subject to involuntary commitment proceedings, whether retained by such persons or appointed by a court as "adversary counsel." We see no reason why the code provisions governing the attorney-client relationship should vary with the particular type of legal proceeding involved. Nonetheless, if need for such specialized treatment of a particular category of cases were to be suggested and *737 established, a change in the Code of Professional Responsibility would best be made in the same manner in which the code was adoptedwith input from those interested and with consideration for the varying points of view.[21]
Furthermore, the involvement of a GAL in these situations does not diminish the adversary counsel's duty to provide his client with zealous, competent and independent representation. Under certain circumstances, parents and children involved with juvenile proceedings have the right to counsel.[22] Said counsel is bound by the most recent amendment to the Wisconsin Supreme Court Rules of Professional Conduct.[23] Counsel must preserve the client's confidences and secrets,[24] exercise independent professional judgment on behalf of the client,[25] and provide the client with competent representation.[26] Accordingly, the trial court was in error here for allowing as the only avenue of recourse for adversary counsel a challenge of a competency determination.[27]
*738 Adversary counsel should have been, and must be, allowed to zealously advocate the expressed wishes of a CHIPS parent. We hold that the purpose of the Children's Code would be defeated if adversary counsel were required to defer to a GAL's plan for waiving the fact-finding hearing stage of a CHIPS proceeding.
Furthermore, if a question arises as a CHIPS parent's competency, a final competency determination can only be made after a full fact-finding hearing.[28] In the case at hand, the trial court determined E.H.'s competency based upon the report of Emiley alone. However, E.H. was not a criminal; she was a CHIPS parent whose competency was suspect, and therefore she had a right to a fact-finding hearing. Thus, the dispositional order which maintained E.H.'s separation from her son was made pursuant to an improper competency determination.
On remand, adversary counsel must be allowed to employ his independent judgment concerning the protection of the rights of E.H. Counsel is required to zealously and competently protect his client's right to factfinding hearings on the issue of her competency, and on her challenge of the CHIPS petition, and his zeal may only be tempered by common sense and the 1988 Rules of Professional Conduct for Attorneys representing disabled clients.[29]
By the Court.Order reversed and cause remanded for proceedings consistent with this opinion.
*739 FINE, J. (concurring).
Unlike the majority, I believe that the material provisions of sec. 48.23, Stats., are not ambiguous. I vote to reverse because the trial court's order violates the clear statutory mandate.
Section 48.23(2)(b), Stats., provides that if a petition alleging that a child is in need of protection or services "is contested, no child may be placed outside his or her home unless the nonpetitioning parent is represented by counsel at the fact-finding hearing and subsequent proceedings." Even if the petition is not contested, "the child may not be placed outside his or her home unless the nonpetitioning parent is represented by counsel at the hearing at which the placement is made." Ibid.[1] In both situations, the parent may waive his or her right to counsel if that waiver is knowing and voluntary. Ibid. The term "counsel" is defined by statute as:
an attorney acting as adversary counsel who shall advance and protect the legal rights of the party represented, and the who may not act as guardian ad litem for any party in the same proceeding.
Sec. 48.23(6), Stats. Counsel was appointed for the mother and, following doubts about the mother's competency, a guardian ad litem was appointed for her as well. See sec. 48.02(9), Stats. A determination of incompetency under ch. 880, Stats., was not sought. See sec. 880.33, Stats.[2]
*740 The phrase "adversary counsel" means what it says. The person fulfilling that role, whether appointed for an indigent parent, sec. 48.23(4), Stats., or privately retained by a parent who is not indigent, must represent that parent "zealously within the bounds of the law." See State ex rel. Memmel v. Mundy, 75 Wis.2d 276, 283-284, 249 N.W.2d 573, 577 (1977). The trial court's attempt to devise procedures when counsel must "throw in the towel" for an objecting client thus violates the statute.
NOTES
[1] See sec. 48.23(2), Stats.
[2] See sec. 48.23(3), Stats.
[3] F.E.W. v. State, 143 Wis.2d 856, 860, 422 N.W.2d 893, 895 (Ct. App. 1988).
[4] Id.
[5] Id.
[6] Id.
[7] Sonnenburg v. Grohskopf, 144 Wis.2d 62, 66, 422 N.W.2d 925, 927 (Ct. App. 1988).
[8] Id.
[9] Rossie v. Department of Revenue, 133 Wis.2d 341, 351, 395 N.W.2d 801, 806 (Ct. App. 1986).
[10] State v. Schaller, 70 Wis.2d 107, 110, 233 N.W.2d 416, 418 (1975).
[11] State v. Hungerford, 84 Wis.2d 236, 252, 267 N.W.2d 258, 266-67 (1978) (citation omitted).
[12] Chapter 48, Stats.
[13] See generally ch. 48, Stats.
[14] Allen v. DHSS, 81 Wis.2d 194, 203, 260 N.W.2d 246, 251 (1977).
[15] Mrs. R. v. Mr. and Mrs. B., 102 Wis.2d 118, 133, 306 N.W.2d 46, 53 (1981) (citation omitted).
[16] See sec. 48.415, Stats.
[17] 124 Wis.2d 47, 368 N.W.2d 47 (1985).
[18] Id. at 61-70, 368 N.W.2d at 54-58.
[19] Sec. 880.33, Stats.
[20] Secs. 55.001 and 55.06, Stats.
[21] State ex rel. Memmel v. Mundy, 75 Wis.2d 276, 283-84, 249 N.W.2d 573, 577 (1977) (citations omitted).
[22] Cf. In re Gault, 387 U.S. 1, 40-41 (1967); see sec. 48.23, Stats.
[23] See 139 Wis.2d xviii (1988).
[24] SCR 20:1.6, id. at xxxiii-xxxiv.
[25] SCR 20:1.2, id. at xxv.
[26] SCR 20:1.1, id. at xxiii-xxiv.
[27] Apparently, adversary counsel for E.H. did not challenge the incompetency determination made by the trial court on the basis of Emiley's report. Prior to the hearing of January 14, 1988, adversary counsel met with E.H.'s GAL, T.L.'s GAL, an assistant district attorney and DSS representatives, and given the anticipated incompetency determination, the attorneys stipulated to a dispositional order for T.L. The voluntariness of the actions of adversary counsel is unclear from the record.
[28] See generally Chapter 880, Stats.; cf. Lessard v. Schmidt, 349 F. Supp. 1078 (E.D. Wis. 1972) (interpreting Wisconsin law) [persons committed to mental disability detention must be provided procedural safeguards during the commitment process].
[29] See SCR 20:1.14, 139 Wis.2d at lix.
[1] Although the United States Supreme Court has declined to make entitlement to appointed counsel for indigent parents subject to termination of parental rights or neglect proceedings a constitutional imperative in all cases, Lassiter v. Department of Social Services, 452 U.S. 18,31-32 (1981), it has recognized that "[i]informed opinion has clearly come to hold" that such a right generally exists. Id. at 33-34.
[2] This case thus does not concern a situation where a parent seeking to contest a CHIPS petition has been determined to be incompetent under ch. 880, Stats., and a guardian of the person has been appointed. See secs. 880.33 and 880.38, Stats. Cf. sec. 48.235, Stats., ("The guardian ad litem has none of the rights of a general guardian.").